IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MERRIDETH ORMISTON, | ) | CASE NO. 4:11 CV 2116 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is this action by Merrideth Ormiston under 42 U.S.C. § 405(g)

seeking judicial review of a 2010 decision by the Commissioner of Social Security denying

Ormiston's 2008 applications for disability insurance benefits and supplemental security

income.[2] The Commissioner has filed an answer[3] and the transcript of the administrative

proceedings.[4] Pursuant to my orders,[5] the plaintiff has filed a fact sheet,[6] and the parties have

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge
Donald C. Nugent in a non-document order entered on October 6, 2011.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11 (Transcript ("Tr")).

[5] ECF # 6 (initial order); ECF # 15 (briefing order).

[6] ECF # 14 (Ormiston's fact sheet).

briefed their positions on the merits[7] and filed charts.[8] The parties have participated in a telephonic oral argument.[9]

For the reasons stated below, I will recommend that the decision of the Commissioner be affirmed as supported by substantial evidence.

## Facts

**A.     The findings of the Administrative Law Judge (ALJ) and the final decision of the Commissioner**

In a lengthy opinion,[10] the ALJ found that Ormiston, who was 33 years old at the time of the hearing,[11] had a high school education,[12] was married, and living with her husband, children, and mother-in-law.[13] The ALJ further found that Ormiston's past relevant work was as a laser-cutting machine operator, spot welder, step press operator, laborer in a plastics plant, and manager of a pizza shop.[14]

---

[7] ECF # 18 (Ormiston's brief); ECF # 25 (Commissioner's brief).

[8] ECF # 18, Attachment (Ormiston's charts); ECF # 25, Attachment (Commissioner's charts).

[9] ECF # 33.

[10] Tr. at 14-30.

[11] *Id*. at 28.

[12] *Id.*

[13] *Id*. at 22.

[14] *Id*. at 28.

The ALJ determined from the medical evidence, and from other testimony, that Ormiston had the following severe impairments: mild degenerative disc disease/degenerative arthritis of the thoracic and lumbar region, without objective evidence of radiculopathy; diagnosis of fibromyalgia, though not properly diagnosed; history of intermittent bilateral leg edema; mild obstructive sleep apnea, largely controlled on continuous positive airway pressure; and morbid obesity.[15]

As to any psychological or mental impairments, the ALJ found that Ormiston did not have any combination of psychological symptoms that imposed, or were likely to impose, more than mild limitations on her activities or cause any repeated episodes of decompensation.[16] In sum, the ALJ concluded that Ormiston had no severe or persistent medically determinable mental impairment.[17]

Given these impairments, and on review of the evidence, the ALJ then found that Ormiston did not have an impairment or combination of impairments that met or medically equaled a listed impairment.[18] Specifically, the ALJ determined that Ormiston's "fibromyalgia [was] not properly diagnosed, [and] is not attended by clinical findings that satisfy the requirements of any of the impairments listed at Section 1.00 of Appendix 1,

---

[15] *Id*. at 16.

[16] *Id*. at 19.

[17] *Id*.

[18] *Id*.

dealing with the musculoskeletal system."[19] The ALJ further made a finding that despite obesity that falls within the Level III range, as well as her fibromyalgia and degenerative disc disease/degenerative arthritis of the spine, Ormiston had not established that the effects of her obesity resulted in a combination of impairments sufficient to satisfy the requirements any listed impairment.[20]

The ALJ made the following finding regarding Ormiston's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with certain modifications. She requires a sit/stand option; can perform postural movements occasionally, except cannot climb ladders, ropes and scaffolds; can perform no overhead reaching or lifting; requires a cane for ambulation; should have no exposure to temperature extremes, wet/humid conditions, environmental pollutants, or hazards; should work in a low stress environment with no production line or assembly line type of pace and no independent decision making responsibilities; is limited to unskilled work involving only routine and repetitive instructions and tasks; should have no interaction with the general public and minimal, no more than occasional, interaction with co-workers and supervisors.[21]

Based on this finding, the ALJ determined that Ormiston could perform only unskilled work at a sedentary level with restrictions and ascertained that Ormiston was unable to perform

---

[19] *Id*. at 20.

[20] *Id*. at 20-21.

[21] *Id*. at 21.

any of her past relevant work that had all been at light to medium exertional levels and all unskilled or semi-skilled in nature.[22]

A vocational expert (VE) was then called upon to testify as to whether, given Ormiston's age, education, work experience, and RFC, there were any jobs existing in significant numbers in the national economy that Ormiston could perform.[23] In that regard, the VE testified that Ormiston would be able to perform the requirements of an ink printer, laminator, and type copy examiner.[24]

Accordingly, in a decision that became the final decision of the Commissioner, the ALJ concluded that Ormiston was not disabled.[25]

**B.     Issues on judicial review**

Ormiston essentially raises three issues on judicial review:

1.      The ALJ improperly discounted the opinion of Ormiston's treating physician, Dr. Jean D. Dib, M.D.[26]

2.      The ALJ erred in discounting Ormiston's credibility as to the extent and severity of her fibromyalgia symptoms.[27]

---

[22] *Id*. at 28.

[23] *Id.*

[24] *Id.* at 29.

[25] *Id*.

[26] ECF # 18 at 3-7.

[27] *Id*. at 7-11.

3.      The ALJ erred in applying an incorrect standard for assessing claims of fibromyalgia.[28]

The Commissioner, in response, argues first that the ALJ properly discounted Dr. Dib's conclusions as to Ormiston's fibromyalgia because the doctor did not provide "a typical diagnostic analysis regarding specific fibromyalgia findings, either in the functional capacity assessment or in the doctor's treatment notes," which did not "give adequate detail about the number of trigger points, specific location, or dates of occurrence."[29] Further, the Commissioner asserts that objective medical evidence from tests conducted by Tagreed Khalaf, M.D., normal or minimally abnormal x-rays and MRI scans, as well as normal electromyogram findings all "provided no objective basis for [the ALJ] crediting Dr. Dib's restrictions on [Ormiston's] physical functioning."[30] Finally, the Commissioner contends that the ALJ relied on objective medical evidence to find that Dr. Dib's limitations based on circulation problems were not supported by the record.[31]

As to Ormiston's credibility, and the proper standard for evaluating fibromyalgia, the Commissioner initially maintains that the ALJ properly applied the applicable law, which holds that "'[a] diagnosis of fibromyalgia does not automatically entitle [a claimant] to

---

[28] *Id*. at 11-14.

[29] ECF # 25 at 13.

[30] *Id*. at 14.

[31] *Id*. at 14-15.

benefits,'"[32] because "'[m]ost persons with fibromyalgia are not totally disabled.'"[33] Moreover, consistent with the rubric that the reviewing court accords great deference to an ALJ's findings on credibility, the Commissioner avers that the ALJ here considered Ormiston's complaints in conformity with the requirements of the regulations, and discounted them in light of "specific citations to medical records and medical source opinions, objective clinical findings, treatment regimen, medication use, and [Ormiston's] activities."[34] In sum, the Commissioner asserts that in light of the applicable standards for evaluating fibromyalgia claims, the ALJ here considered a range of evidence, not placing "undue reliance on the clinical findings or lack thereof in light of [Ormiston's] diagnosis of fibromyalgia."[35]

Ormiston filed a reply brief. First, she contends that the Commissioner did not adequately address the ALJ's decision to discount Dr. Dib's conclusions as to the effects of Ormiston's heart arrhythmia.[36] Next, she asserts that the Commissioner's other arguments regarding Dr. Dib's opinions are "contradicted by the record,"[37] specifically contending as

---

[32] *Id.* at 15, quoting *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008).

[33] *Id.*, quoting *Dalzell v. Comm'r of Soc. Sec.*, Case No. 1:06-CV-557 (N.D. Ohio January 8, 2007).

[34] *Id*. at 16.

[35] *Id.* at 18.

[36] ECF # 29 at 1-2.

[37] *Id*. at 3.

to fibromyalgia that while the exact number of trigger points were not identified in the record, that evidence likely existed in an earlier examination that was not part of the record here.[38] Ormiston argues that an ALJ should not be permitted to discredit a treating physician's opinion on the basis that it is not supported by the evidence of record "when it was within the ALJ's power to order, or request, the evidence that would have satisfied his doubt."[39]

Finally, Ormiston maintains that the ALJ's error in assessing credibility was that she "over-relied, in contradiction to Social Security law and policy, on objective evidence," as well as other errors, in examining the limitations imposed by a diagnosis of fibromyalgia.[40]

## Analysis

### A.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

---

[38] *Id.*

[39] *Id.* (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 n.2 (6th Cir. 2010)).

[40] *Id.* at 4.

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

>The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[41]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[42] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[43]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

## B.    Application of standard – the decision here is supported by substantial evidence.

### 1.    Overview

I start by revisiting the subject of fibromyalgia, a subject which I have previously addressed in writing starting with opinions published in 2003 in *Swain v. Commissioner of*

---

[41] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[42] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[43] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

*Social Security*[44] and *Wines v. Commissioner of Social Security*,[45] with the relevant analysis further developed in later cases such as *Dalzell v. Commissioner of Social Security.*[46] The Sixth Circuit, in turn, has clearly articulated the rubric applicable to claims of fibromyalgia in *Rogers v. Commissioner of Social Security*,[47] a decision that acknowledged *Swain* and essentially adopted its analytical framework.

*Dalzell* provides a useful overview of the decision pathway to be taken in these cases when, as here, there is an opinion from a physician as to a claimant's functional limitations in light of diagnosed fibromyalgia:

> Fibromyalgia is an impairment that defies diagnosis by objective clinical tests. Nevertheless, most persons with fibromyalgia are not totally disabled. The task of the ALJ in the first instance, and ultimately the reviewing court, is to make a reasoned judgment as to what limitations a claimant's fibromyalgia causes.

> In making this judgment, the ALJ preferably has the benefit of the opinion of a treating source who has properly evaluated and monitored the claimant over a meaningful time period. To have controlling or significant weight, the opinion must include an assessment of the claimant's ability to perform work-related activities such as lifting, carrying, standing and walking. Conclusory opinions that the claimant is disabled are entitled to no deference.
> ***
> Where the treating notes of the opining physician do not support the opinion, or the evidence as to credibility show that the claimant is capable of more than the physician has opined, the weight afforded to the treating sources opinion may be assigned accordingly.

---

[44] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986 (N.D. Ohio 2003).

[45] *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954 (N.D. Ohio 2003).

[46] *Dalzell*, Case No. 1:06-CV-557 (N.D. Ohio Jan. 8, 2007).

[47] *Rogers*, 486 F.3d 234.

-10-

***

[In that regard, and consistent with long-established authority], [t]he ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints. A court may not disturb the ALJ's credibility determination absent compelling reason.[48]

Here, it is important to begin by noting that the relevant issue is the effects from Ormiston's fibromyalgia, not whether such a diagnosis is supported. It must be recognized that the ALJ here included fibromyalgia as one of Ormiston's impairments, although with the observation that it was not "properly diagnosed."

Indeed, the case authority is clear that even with a "gold standard" diagnosis of fibromyalgia (*i.e.*, a claimant whose sensitivity of at least 11 of 18 trigger points on the body was determined by a physician who also noted other "hallmark symptoms" and systematically eliminated other diagnoses)[49] will not automatically entitle a claimant to disability benefits.[50] Rather, a determination of disability will be the result of finding limitations imposed by the fibromyalgia.[51]

---

[48] *Dalzell*, Case No. 1:06-CV-557, at 4-5, 7 (citations omitted).

[49] *See*, *Rogers*, 486 F.3d at 244 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). The Commissioner correctly points out that Ormiston's treating physician, Dr. Dib, is not a rheumatologist and did not document the number and location of the positive trigger points found. Dr. Dib's analysis, therefore, falls significantly short of the gold standard referred to in *Rogers*.

[50] *Vance*, 260 F. App'x at 806.

[51] *Swain*, 297 F. Supp. 2d at 990. "[U]ltimately, the ALJ must decide, given the factors set forth in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled."

In that regard, the finding of any limitations imposed by pain from fibromyalgia will usually involve a treating physician's opinion on that issue as well as testimony from the claimant. But, as *Swain* points out, because a physician's opinion on this matter will usually depend in large part on an his assessment of his patient's subjective complaints, it is the ALJ's assessment of the claimant's credibility that is of "paramount importance" in a fibromyalgia case.[52] That said, insofar as a treating physician's opinion as to functional limitations is not grounded on the claimant's own subjective complaints, it is, as detailed above, entitled to weight to the extent that it is supported by that physician's treating notes and not otherwise contradicted by other substantial evidence of record.[53]

It is well-settled that pain alone, if caused by a medical impairment, may be enough to be disabling.[54] When such an allegation is made, the ALJ then usually follows a two-step analysis that asks: (1) whether there is an underlying medical impairment, and (2) whether there is objective evidence to confirm the pain or whether the underlying condition is such that it can reasonably be expected to produce the alleged disabling pain.[55] Because disabling pain from fibromyalgia will not often be confirmable by objective medical tests, but such pain is possible from that condition, the ultimate issue often becomes whether the claimant's own complaints in that regard are credible.

---

[52] *Wines*, 268 F. Supp. 2d at 958.

[53] *Dalzell*, Case No.1:06-CV-557, at 4-5.

[54] *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

[55] *See*, *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

-12-

As the Sixth Circuit stated in *Felisky v. Bowen*, if an ALJ is to reject a claimant's testimony as incredible, he must clearly state his reasons for doing so."[56] In that regard, SSR 96-7p provides seven factors for an ALJ to consider in making a determination as to the claimant's credibility.[57] But, as I discussed in *Cross v. Commissioner of Social Security*,[58] an ALJ is not required to address all seven factors, but must show that he considered the relevant evidence.[59]

## 2.    The ALJ here properly found that Ormiston's subjective complaints were not fully credible and that Dr. Dib's functional limitations were not supported by evidence of record.

In this case, I note initially that the ALJ began her analysis of any limiting effects from Ormiston's claimed pain by correctly setting out the two-step process for addressing such claims outlined above.[60] While next concluding that Ormiston's impairments could reasonably be expected to cause some of the alleged disabling symptoms, the ALJ then

---

[56] *Id*. at 1036.

[57] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures, other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

[58] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

[59] *Id*. at 733.

[60] Tr. at 21.

-13-

determined that Ormiston's claims regarding disabling pain were not credible.[61] In that regard, the ALJ cited the following:

(a)     in November, 2006 Ormiston had good results from Lyrica in managing the fibromyalgia pain;[62]

(b)     in May, 2007, Dr. Dib recommended that Ormiston "cut down" on Percocet;

(c)     in October 2009, Dr. Dib recommended physical therapy, but apparently Ormiston did not follow that recommendation;

(d)     in March 2010, Ormiston was referred to a rheumatologist, but apparently did not go;[63]

(e)     in April, 2010, Dr. Dib noted that Ormiston's fibromyalgia was improving with Cymbalta;

(f)     just two months later, on June 17, 2010, Dr. Dib reported that Ormiston's fibromyalgia was "out of control";

(g)     less than one month after that, on July 15, 2010, Dr. Dib noted that Ormiston's fibromyalgia was "stable;" and

(h)     in August, 2010, Dr. Dib recorded that Ormiston was taking too much Percocet and that she would be not be prescribed any more narcotic pain medication.[64]

This objective evidence, the ALJ concluded, "fail[s] to establish a basis for the degree of disabling functional limitations alleged by [Ormiston]."[65] In particular, the ALJ observed,

---

[61] *Id*. at 22.

[62] *Id*. at 25.

[63] *Id.*

[64] *Id*.

[65] *Id.* at 26.

she "has not generally received the type of medical treatment one would expect for a totally disabled person," noting that Ormiston "has required no inpatient surgeries or hospitalizations for her impairments."[66] Further, given the above history of improvement and or stabilization of the fibromyalgia from medications like Lyrica and Cymbalta, as well as the recommendations of physical therapy and a referral to a rheumatologist which Ormiston did not follow, the ALJ stated that Ormiston's treatment of this condition "has essentially been conservative or routine in nature," and marked by failure to follow up on recommendations for treatment, "which suggest that the symptoms may not have been as severe as alleged."[67]

In considering this analysis by the ALJ in light of the *Cross* factors for evaluating complaints of debilitating pain, I note that the ALJ here explicitly considered at least three of those factors (type, dosage, effectiveness and side effects of medication, and treatment other than medication) in formulating her assessment. In that regard, I observe that the ALJ specified on the medical evidence the various treatments and medications which controlled the fibromyalgia – even to the point of making it stable. I further observe that the ALJ identified two non-medical treatments that were suggested to Ormiston, but which she did not employ.

In sum, the ALJ here did not rest the credibility finding on her own personal observations of the claimant at the hearing (the so-called "squirm" test), nor on an

---

[66] *Id*.

[67] *Id.*

-15-

extrapolation from the claimant's daily activities – a practice that has recently come under some criticism. Instead, the methodology employed here led to a decision that was clearly stated, largely grounded on the most relevant of *Cross* factors to Ormiston's situation, and fully reviewable.

In opposition, Ormiston argues that her pain has been "documented by a number of medical providers."[68] In fact, the 11 record examples cited in her brief are of her subjective complaints being recorded by a provider. Plainly, a claimant's subjective complaint is not rendered credible solely because it is laundered through a provider's notes.

In addition, Dr. Dib's opinions as to Ormiston's work limitations[69] are likewise dependent in the first instance on accepting Ormiston's complaints as to the severity of her pain. There are no independent functional studies cited in Dr. Dib's opinions as objective, alternative bases for the opinions concerning Ormiston's limitations. Thus, as was said in *Dalzell*, Dr. Dib's opinions as to function are entitled to great weight only to the extent those opinions are not initially based on Ormiston's own subjective complaints and are grounded in treating notes and otherwise not contradicted in the record. By that standard, Dr. Dib's opinions are not entitled to great weight, and the decision of the ALJ on that subject was based on proper application of sound authority.

---

[68] ECF # 18 at 4.

[69] *Id.* at 5.

## Conclusion

For the foregoing reasons, I recommend that the decision of the Commissioner in this matter be affirmed as supported by substantial evidence.

Dated:  December 13, 2012                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[70]

---

[70] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).